My name is Diane Dragon and I represent Jonathan Wells. I'd like to reserve two minutes for rebuttal. Mr. Wells is serving a 120-month, high-end-of-the-guideline sentence that was imposed after the government repeatedly breached the party's plea agreement in an attempt to secure a sentence almost double the median guideline sentence imposed on offenders between 2016 and 2020. To counter the extensive amount of mitigation presented by the defense, the government attacked factually accurate statements regarding Mr. Wells' conduct in the case and intentionally disregarded terms in the party-signed agreement. They proffered facts not contained in the plea agreement. Judge Goldberg Well, you're throwing out motive stuff as though it's, as though it was adjudicated. That's your interpretation. Diane Dragon Understood, but the government did proffer facts into evidence that were not in the plea agreement, were not in the pre-sentence report, were not in the sentencing memorandum. And they proffered those in a way that undercut the plea agreement and the benefit that Mr. Wells had bargained for. Those arguments breached that. Judge Goldberg While we're into bad motive and so forth, the relief you ask includes for us to direct the case be assigned to a new judge. Why? Diane Dragon Because the judge in this case has already heard this tainted evidence. The breach occurred in front of the judge. The judge was presented evidence about distribution that was not appropriate. Judge Goldberg And give me a case from anywhere that says that's the kind of bias under Leitke that requires recusal or directed recusal. Diane Dragon So I believe that there's several cases. Essentially Judge Goldberg Oh, we've done it before. Diane Dragon Yes. Judge Goldberg But frankly, it offends me when a, particularly a federal defender comes in and says, well, assign this to a different judge, meaning that we are to tell the judge that he or she is biased when there is no record evidence of anything other than an error of law. Diane Dragon And I understand the court's concern by imputing some sort of Judge Goldberg Just don't do it again because I can assure you that I will not do that anytime it is asked for without a clear basis for us to question. Diane Dragon Understand, and I will convey that within my office. Judge Goldberg I hope you will. Diane Dragon I just, I would point out that that is the common remedy granted by this court. Judge Goldberg It's not common. It's been done. Diane Dragon Understood. But the government's breach resulted in Mr. Wells receiving a high end of the guideline sentence in this  made or what was put in front of the district court? Diane Dragon Yes. Judge Goldberg Was this the offending information that caused what you allege was error on the part of the district court? Diane Dragon Sure. I will jump right to that. So when the government started their argument, the first thing that they say out of the gates talks about Mr. Wells deleting, I had argued about the deletion of images, and they said that he's really good at covering his tracks. And then they go in and tell the court that it was only out of an overabundance of caution to be generous and fair to the defendant that the government did not pursue distribution in this case. So that's the start of them approaching the breach. That's definitely not an enthusiastic endorsement of the plea agreement term that said his conduct was limited to Judge Goldberg They're not obligated to enthusiastically endorse it. Diane Dragon I understand. But then the next statement they made is when they jump over the line into the breach. They tell the court that along with the finding of images, law enforcement found multiple indications of evidence of a BitTorrent program. And then they explain how a BitTorrent program works and conclude with that that program by necessity causes it to distribute those images as well. And they say that was how the software applications work and that was what was found on the computer system. So they have absolutely undercut the plea negotiation term that says his conduct was limited to receipts and he did not intend to distribute. By introducing evidence that he possessed something, that by necessity distributed this. And that was found on his computer. And then she goes on to state, I think that's an accurate reflection of BitTorrent cases from the Ninth Circuit and elsewhere. Judge Loken, as you know, you did rule on a case over ten years ago indicating that if you have that BitTorrent program on your computer, it imputes distribution. However, that was not... Judge Loken Permits. Diane Dragon It permits. Judge Loken It bites. Diane Dragon Yes. Judge Loken And usually accompanies. Diane Dragon Yes. But the government took a fact that if it wanted to argue to the court, it should have it waived its right to talk about... Judge Loken I think the agreement, and I'm sitting here looking at that 6A2 whatever, I think it's quite ambiguous in the context you're talking about. Diane Dragon The actual guideline... Judge Loken For the reasons the government says in its brief. Diane Dragon So the actual bargain for agreement is that Mr. Well's conduct was limited to receipts and that he did not intend to distribute. If the government wanted to argue that he could have or he may have or he possibly did, they had to reserve that right in the plea agreement to put on evidence... Judge Loken But the BitTorrent comment didn't say intent. Diane Dragon I think that it's not... Judge Loken It said that that is a natural consequence of the conduct. It did not make a comment regarding intent. Diane Dragon There's two parts to the benefit of the bargain. That his conduct was limited to receipts and that he didn't intend to distribute. When you say he may have distributed or that there was... Judge Loken All he said was he received, what he received included what he received on BitTorrent. Diane Dragon But the actual underlying facts, which the government didn't put in a sentencing memo or tell to the court, is there was no correlation between that deleted program and whether or not that's how he got the pornography. So that's a fact that was not in evidence and the government made a leap between he possessed something in a deleted tower and he possessed pornography and therefore he must have gotten the pornography from the BitTorrent program. And that wasn't in evidence. Judge Loken Was there an objection made at the time? Diane Dragon There was not an objection made at that time. Judge Loken So are we reviewing for plain error? Diane Dragon You are reviewing for plain error. Judge Loken What in the district court's actual statements imposing its sentence would indicate the district court improperly or somehow took inferred and the implied assertion of distribution? Is there something to indicate that the district court did what you fear they may have done, which is impose a higher sentence based on the probability of distribution? It seems on this record, with the voluminous number of images involved, the district court had other reasons and bases for reaching the same sentence that it did without consideration of anything to do with the potential for distribution. Diane Dragon So the district court did not specifically say distribution weighed into my calculus, but he asked multiple questions about it from the prosecutor and then ended up with a neutrality statement from the prosecutor, which was not again what the defendant bargained for. And then he gave a sentence. Judge Loken As you well know, if the defense counsel had said at the end of the judge's explanation, what if any weight are you giving to the distribution issue? And all the defense lawyers know full well if they ask that question, there's not going to be an appealable error when the judge is done answering it. And that's why I have written on more occasions, this isn't plain error review, it's waiver. It's waiver by counsel of an issue that counsel has full authority to control. Diane Dragon Your Honor, and I've seen those opinions, and what I would say is, I know there's a concern that a defense attorney is going to sandbag and not object, but I think you're over... Judge Loken Well, it's not sandbagging. It's like antitrust lawyers are told about the Federal Trade Commission, don't ask a question because you won't like the answer. It's not truly sandbagging, but it's, you know, if you ask a question when the record is ambiguous, by the time a good district judge and a fair and well-balanced district judge is done, the issue will go away. You don't know how. Diane Dragon I mean, I understand the court's argument, and I acknowledge that I failed to object, and that is an error on my part. When the court said that I could respond to the government's argument, he said briefly, and I focused on the other offensive argument the government made about production. Judge Loken Well, I'm talking after the court's explanation. Diane Dragon And I did object to the substantive and procedural reasonableness, including how he weighed the factors. Judge Loken I know, but you didn't ask, Your Honor, are you giving weight to the distribution comments by the government? Diane Dragon You're correct. I did not break down by item how he weighed the issues, so... Judge Loken And I'm in a minority, but I would say that's waiver. Diane Dragon I understand. And perhaps we'll have time for rebuttal. I'll leave that to the court. Judge Loken Thank you, Ms. Dragon. Ms. Anderson. Ms. Anderson Thank you, Your Honors. Good morning, Your Honors. Good morning, Ms. Dragon, and may it please the court. Your Honors, dispositive of this appeal is the fact that the government did not advocate for any outcome different than the one it promised in the plea agreement. Not with respect to the calculation of the sentencing guidelines, not with respect to the sentence that the government asked for, and not with respect to any other provision of the plea agreement, Your Honors. The defendant is arguing to you that the plea agreement, which indicated that the defendant should receive a guideline benefit because he did not intend to distribute child pornography and because he did not knowingly distribute child pornography, somehow precluded the government from opposing the defendant's drastic further downward variance predicated in part upon the defendant distinguishing himself from other child pornography offenders by saying that he did not distribute. And I'll address that a little further because the comments of the defendant went much further than that. Had it been left at that, the government would not have said a thing, but it went into the territory of misconstruing the facts in this case. But in this case, there was no bait and switch. There was no wink at the court. There was no explicit or implicit urging by the prosecutor that the court fashion a higher guideline sentence or guidelines range, or that the court impose a higher sentence than the one advocated by the government, which was solidly within the guidelines agreed to by the parties that included a four-level benefit for the absence of intentional and knowing distribution. And so I'd like to turn to the language of the plea agreement. And of course, I would point out that this court has determined that it is the specific language of the plea agreement that is controlling in this court's decisions in Loveless and then even much more recently in the Beston case in 2022. So the guidelines are not blunt when it comes to the issue of distribution. The guidelines are very narrowly tailored. And what the guidelines indicate is that the defendant is to be afforded a two-level deduction if the evidence supports that he did not intend to distribute. In addition, under section B3, the guidelines provide that the defendant could get an enhancement if the government can prove that he knowingly distributed. In this case, the government did not pursue the enhancement and did give the deduction. So effectively, the government in the plea agreement promised to a four-level guidelines benefit because the defendant did not intend to distribute and the defendant did not knowingly distribute. So let me turn then to the actual statements made because even as they were purported to you here today, I trust you will go back to the transcript because what was indicated is not quite accurate, Your Honor. The statements by the government first and foremost should be looked at within the context of the oral argument. By the time those arguments were made, the sentencing guideline calculation was decided. It was in the vault. It was uncontroverted. It was uncontroverted that the defendant was going to receive a four-level guideline benefit for not intentionally and knowingly distribute. That was in the plea agreement. It was in the pre-sentence investigation report. The parties had in writing confirmed for the court that they had no objection to the sentencing guidelines as computed in the PSR and orally at the time of sentence before we started argument, we again reaffirmed no objection. So that's decided. The defendant then argued for a substantial further downward variance based in significant part upon the fact that the defendant, based on distribution, and what specifically the defendant said was that files came to him and they never went back out. The defendant further argued that's a unique factor. So in contrast, he deserves less of a sentence than other offenders because this offender didn't engage in the conduct that is more offensive in many ways and this defendant wasn't part of making the market. All you had to say in response is, your honor, that's already been taken into account in the guidelines range in two different ways. Yes. However, the court sort of did that for the government because the court then responded to the defendant and said, well, didn't he already receive a benefit for that? And the defendant did acknowledge that but furthered the defendant's argument that a further downward variance was warranted. So it was in the context not of calculating the guidelines, not of disputing the four-level benefit, but of this further downward variance that the government pointed out that the defendant did procure his child pornography by use of peer-to-peer file-sharing networks. What the government said, it did describe how these file-sharing networks work and it told the court that in basic... Was that in the PSR? It was, no, those facts were not in the PSR and they were not in the factual agreement, the fact section of the plea agreement. They were left open. And, of course, as this court has pointed out, I think in the Leach case in 2007 and in the Herod case, that the government doesn't breach the plea agreement when it advocates about issues that are left unresolved in the plea agreement. Counsel, isn't it a bit unusual to make the agreement that you did and then come back and say, well, there's no evidence of distribution, but there's no evidence there wasn't. I mean, there's kind of an implication there that, well, we think there was, but we're not pushing it. Do you think this is getting close to the line? I do not think it's close to the line, Your Honor, both because the promise of the government in the plea agreement with respect to the guidelines was that the defendant didn't intend to distribute and didn't knowingly distribute. I think the British may have a characterization of what the prosecutor did, being too clever by half. Well, Your Honor, I appreciate that and I understand that, but I do think if you look at the actual argument of the prosecutor, and certainly, Your Honor, I consistently wish I was more artfully put in my oral advocacy than I am, but it cannot be ignored that more than once, at least two, perhaps three times, the government specifically told the court there is no evidence of distribution in this case. What the government was saying was that it is... There's no evidence that I'm asking the court to consider that he did, but there were these victor programs and I think it is important. Well, you know what it said. You said it. Was this your argument? That's my argument. Yes, Your Honor. It is. It was my... Yes, Your Honor, I did represent the government in this underlying case. So while the government is telling the court there is no evidence of distribution in this case, that the government could point to no images of child pornography that were distributed, the government is making the point, in direct refutation of the point made by the defense, that somehow the defendant was less of an egregious offender than others, that he did use a peer-to-peer file sharing network, which risked distribution. And so when the defendant says that he's less offensive than other offenders because he wasn't part of making this market, the government's pointing out that he was procuring his child pornography in a very dangerous way, by using a peer-to-peer file sharing network. But the government did not get within a mile of saying that he intended to distribute or that he knowingly distributed, and the government made an explicit point to tell the court there is no evidence of distribution in this case. And you understand... But as counsel said, the agreement also said all he did was receive. I guess you can argue that anyone who receives child pornography assists in distribution by others, but receiving, you can receive it a lot of ways other than with these file sharing mechanisms. That is correct. He could have received his child pornography in different ways, but in fact he did not. He used file sharing networks. But that was a fact not otherwise known to the district court, or made known. That is correct. It was not part of the limited facts that provided the factual basis that were put into the plea agreement, and it is not a fact that the probation office chose to put into the pre-sentence investigation report. So it may have been new information for the court, but it's not factually disputed that these file sharing networks were there. Does the record show whether these facts were provided? Typically the government provides the probation officer with its record of the facts to put in the PSR. Do we know whether this BitTorrent fact was made available to the probation officer? So that is not reflected in the record, but I can assure the court that yes, it was provided to the probation officer, that the entirety of the discovery was provided to the probation officer. So the government knew the probation officer chose not, knowing of the plea agreement, chose not to put that in the facts? Yes, the government was aware that it was not in the facts. What the government was not aware of until oral arguments started was that the defendant was going to, say, overstate the case in terms of the defendant's participation in the market of child pornography. Didn't the sentencing memorandum ask for a variance? They did, yes. Okay, so you knew it was coming. I knew the variance was coming. I did not know that those specific statements that I thought overstated the evidence were coming. So I knew they were asking for a variance that was in the plea agreement. They knew I would be asking for a guideline sentence that was also in the plea agreement, Your Honors. If I could just briefly address, also, Your Honors, the district court made a very thorough record as to its bases for the sentence in this case, and the defendant has utterly failed to establish or prove that the sentence would have been somehow lesser if the court had not heard about this passive risk of distribution by virtue of peer-to-peer file sharing networks. I can't resist reading from the reply brief, the government's other attempts at sprucing up the record are as clumsy as its breaches are obvious. I'm sure you're taking that in a good professional way. That's the unkindest cut of all, you might say. Who said that? Yes, I did. Well, anyway, I disagree, but they're very interesting briefs on both sides. Well, thank you very much, Your Honors. Certainly, the government maintains that it did remain meticulously faithful to the plea agreement, and not arguing that there was knowing and intentional distribution, and even further assured the district court that the government had no evidence of distribution. Thank you very much, Your Honor. Ms. Dragan? Your Honor, her time has expired. All right. Well, did you hear something in the government's position that you... I can respond in 30 seconds, Your Honor. All right, 30 seconds you have. Thank you. The government continues to say they didn't say he intended to distribute. They keep leaving out that first part, that his conduct was limited to receipt. That was an equal part of the bargain. The government also suggested that Mr. Wells got the benefit of the agreement because no one objected to the PSR, but the court didn't decide what benefit came from that agreement until sentencing him, and his sentence was equivalent to an individual who had distributed. It was essentially the low end of the guideline for someone who distributed. So we can't stand here and say that he got the benefit of the bargain. Now, wait, wait, wait, wait. He got a range that included two non-distribution benefits. So the fact that the guideline range was up higher probably was attributable to his criminal history or the number of images or other factors. He had no criminal history. The guideline range was 97 to 121. But the guideline range, if he had not got that two-level benefit, started at 121. So essentially the court sentenced him right at the intersection of someone who did distribute. And that's what I'm just saying on that point. So thank you. That could just mean he was at the highest end of those who were responsible for simple possession. But looking at the nature of the images and the multiplicity of them, could have legitimately put him at that high range for simple possession. Sure. But as I pointed out to the district court, 100 percent of defendants the prior year had received a variance below the guidelines. So not only did he not get what most defendants in this courthouse got, he got a sentence at the high end of the guidelines and a sentence higher than anybody had gotten for receipt from 2016 to 2020 in this courthouse. So I do think that that goes into the prejudice to Mr. Wells. Thank you. Thank you, Ms. Dragan. The court appreciates both counsel's participation and argument to the court this morning. We will find it helpful in resolution of the issues in this case. Thank you. Counsel may be excused. The court is going to take a 10-minute recess prior to.